IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JACKIE LAMONT ARTIS**                                                  **PLAINTIFF**

**V.**                                                  **CIVIL ACTION NO.:3:21CV13-DAS**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                                **DEFENDANT**

### MEMORANDUM OPINION

The plaintiff, Jackie Lamont Artis, seeks judicial review of the Social Security Administration's decision denying his application for Social Security Disability and Supplemental Security Income. The plaintiff asserts two errors in his appeal. The undersigned, having reviewed and considered the record, briefs and oral argument and having considered the applicable regulations and case law in this matter, finds the decision of the Commissioner of Social Security must be reversed and the case remanded for further action.

### Facts

The plaintiff, Jackie Lamont Artis, filed for benefits on November 30, 2018, alleging onset of disability commencing on May 26, 2018. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the Administrative Law Judge (ALJ) issued an unfavorable decision on July 22, 2020. (Dkt. 11, p. 9-20).[1] The Appeals Council denied the request for review, and this timely appeal followed.

The ALJ determined Artis has the following severe impairments: disorders of the lumbar spine and right hip, as well as an adjustment disorder with mixed anxiety and depression. Artis

---

[1] The administrative record is Docket 11. Unless otherwise indicated, all references are to the administrative record. The page cites are to the court's numbering system, rather than the administrative numbering.

has a limited education and borderline intellectual function. The ALJ found he retained the residual functional capacity (RFC) to perform sedentary work. He can lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently. He can stand/walk for two hours and sit for six hours in an eight-hour workday. He can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. He can occasionally stoop, crouch, kneel, and crawl. He must avoid working around unprotected heights. He can understand, remember, and carry out simple instructions and perform simple routine and repetitive tasks. He can sustain attention, concentration, and persistence on task for two-hour periods throughout an eight-hour workday with normal breaks. He can have occasional interaction with supervisors and coworkers but never with the general public. He can adapt to simple, infrequent, and gradually introduced changes in the workplace. The ALJ determined the plaintiff could not perform his past relevant work as a shipping and receiving clerk because that job is performed at the medium level of exertion. Artis is a younger individual, thirty-nine years old as of the alleged date of onset and has a limited education. Based on the testimony of the vocational expert the ALJ found Artis could perform the requirements for other jobs in the national economy,[2] and was, therefore, found not disabled through the date of the decision.

## Analysis

The plaintiff asserts two errors. Artis argues the ALJ erred in his analysis of the medical source statement of the claimant's treating nurse practitioner, Michelle Cullen. He also argues the Appeals Council failed to properly consider medical evidence submitted after the hearing.

---

[2] The vocational expert testified that Artis would be able to work as a lens inserter, 15,000 jobs, assembler,195,00 jobs, and table worker, with 1,000 jobs in the national economy.

Here the court finds that the decisive issue is the second one -- error by the Appeals Council. The court agrees with the plaintiff that the Appeals Council erred in determining that additional medical evidence submitted after the ALJ's decision did not create a reasonable probability that it would change the outcome of the ALJ's decision.

Under the applicable regulations, if the Appeals Council "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision" it will review the decision" if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970 (5). After the hearing Artis submitted medical records from Specialty Orthopedic Group covering January 29, 2020 through September 2, 2020 and from Baptist Memorial Hospital-Oxford dated August 31, 2020. The Appeals Council found the additional records did not establish the needed reasonable probability that they would change the outcome of the decision to deny benefits. The plaintiff argues that the findings from an August 31, 2020 MRI are so significant that the Appeals Council should have sent the case back for further review.

### A.  Scope of Federal Court Review

The court first addresses the Commissioner's challenge to the authority of the court to review the Appeals Council's decision. While the Commissioner has addressed the merits of the appeal, her brief shows the Commissioner renewing an old argument -- that the federal courts cannot review the Appeals Council's decision to deny review.

The question of whether the Appeals Council's action, which is the final step of the administrative process, is subject to federal court review has been decided differently across the circuits, but in *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005) the Fifth Circuit joined the majority of circuits in holding that the actions of the Appeals Council are part of the agency's

final decision and subject to court review.[3] The court found multiple reasons for its holding. It noted the agency's regulations invite the submission of evidence to the Appeals Council, providing one last chance for the claimant to prove their claim and excluding such evidence from consideration on appeal would defeat the purpose of those regulations. *Id.* at 336. The then-existing regulations required the Appeals Council to consider all of the evidence in the record, including any new and material evidence, making the new evidence part of the administrative record. *Id.* Additionally the agency's decision is not final until the Appeals Council either grants or denies review. "Therefore, when the Appeals Council denies review after considering new evidence, the Commissioners final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remain correct despite the new evidence." *Id.*

In this case, the Commissioner again challenges the propriety of the federal courts reviewing the Appeals Council's denial of review. The defendant argues this court cannot consider the new evidence submitted to the Appeals Council under its revised regulations. The Social Security Administration has rewritten much of its regulatory scheme with many substantive changes in the last five years. It also changed the regulations governing the Appeals Council review effective January 17, 2017 and those changes are applicable to this case.

Under the previous regulations the Appeals Council was charged with deciding if the ALJ's decision was contrary to the weight of evidence in the record, including any new and

---

[3] At the time *Higginbotham* was decided, the Third, Sixth, and Seventh Circuits held that the Appeals Council decision was not part of the final decision and not reviewable. *Higginbotham*, 405 F. 3d at 335. At that time the Second, Fourth, Eighth, Ninth and Tenth Circuits held Appeals Council decisions were reviewable. *Id. Higginbotham* also cited to *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998), as placing the Eleventh Circuit in line with the "no review" position. *Falge* declared: "When the Appeals Council has denied review, we will look only to the evidence presented to the ALJ." *Id.* at 1323. But in *Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007) the Eleventh Circuit noted the plaintiff in *Falge* submitted new evidence to the Appeals Council but did not appeal the denial of review. *Ingram* found that the *Falge's* discussion of the scope of review was dicta. *Ingram* reversed the district court's decision which had refused to review alleged error by the Appeals Council when it denied an appeal.

material evidence. The Commissioner was required under those regulations to "evaluate the entire record including the new and material evidence submitted." *Higginbotham*, 405 F.3d at 327. Per the Commissioner's brief this duty to evaluate the record is no longer applicable. "Instead, the regulation directs the Appeals Council to perform a threshold inquiry for submissions of additional evidence as to whether the evidence in question is new, material, relates to the period addressed by the ALJ's decision, and creates a reasonable probability of a different outcome." Commissioner's Brief, Dkt. 19 p. 15. The Commissioner argues "the regulatory foundation for regarding evidentiary submissions of evidence as part of the administrative record for the purposes of § 405(g) is no longer present and further that evidence submitted to the AC is "properly regarded as out-of-record evidence" that the federal courts may not consider on appeal. *Id.*

Without considering whether this agency may by regulation limit federal court review without running afoul of 42 U.S.C. § 405(g), the court finds the Commissioner's argument is without merit. Nothing in the language of the new regulations impacts the scope of federal court review. First, the regulations are not imposing a "threshold" inquiry, as suggested in the Commissioner's brief. Dkt. 19, P. 15. Yes, the regulatory language has changed the standard of review for the Appeals Council, but it is a standard of review, not "a simple procedural matter."

The Appeals Council's decision in this case confesses both "good cause" for the late receipt of medical evidence and that these records relate to the relevant time period, by not addressing them. The Appeals Council's remaining task was determining if the new evidence creates a reasonable probability of a new result, if considered by the ALJ. That is not a determination that can be made without a review of the evidence in the record before the ALJ. As a matter of logic, the entire record must still be reviewed to make the required determination.

Without reviewing the new evidence against the evidence before the ALJ, it is impossible to determine if the evidence is merely cumulative or likely to alter the decision. Furthermore, the Commissioner has acknowledged the breadth of Appeals Council's duty to review the entire record under the new regulations. The new regulations have brought about revisions to the HALLEX. Appeals Council review is addressed in Hallex I-3-3-6, 1993 WL 643129, which was updated on May 1, 2017. It sets out the general requirement that written evidence be submitted five days prior to the hearing; establishes what is required to show "good cause" for later submissions; and defines what constitutes "new" evidence, "material" evidence and evidence that "relates to the period on or before the hearing decision." The HALLEX in addressing "Reasonable Probability that the Additional Evidence Will Change the Outcome" contains a single sentence—"The AC will evaluate the entire record with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision."

The court is unpersuaded that the regulatory changes regarding the Appeals Council have any impact on the scope of this court's review of the Commissioner's decision as set out in *Higginbotham.*

**B. Is the Later Submitted Evidence Strong Enough to Show a Probability of a Different Result?**

The Commissioner notes in her brief that the United States Supreme Court has defined "a reasonable probability of a different result" as "a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). "[T]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter* 562 U.S. 86, 112

2011). "But it does not require a showing that … [the new evidence] more likely than not altered the outcome." *Id.* !

In considering whether the new evidence demonstrates this "reasonable probability," the court must consider the evidence before the ALJ, his analysis of that evidence, and the decision he reached on that evidence. The court must then look at the strength of the later submitted evidence to determine if the Appeals Council should have found that the new evidence created a substantial likelihood of a different result.

It is significant that the ALJ found, based on the evidence before him, that Artis was limited to less than a full range of sedentary work. He found Artis can lift less than ten pounds frequently and ten pounds occasionally and has multiple postural limitations. The ALJ also found significant nonexertional limitations impacting his capacity to simple work and limited interaction with others in the workplace. In a word, the ALJ assessed such a limited RFC, he found Artis was on the cusp of being disabled. The more restrictive the RFC in the ALJ's decision, logically, the less compelling additional evidence would need to be to create a reasonable probability of a different result.

In his decision the ALJ reviewed the evidence of Artis' physical problems, noting his medical history showed significant degenerative disc disease of lumbar spine, with X-rays showing degenerative endplate changes at L5- S1 with sclerosis and showing a possible vacuum disc phenomenon, mild facet sclerosis and relatively short pedicles. An incomplete fusion was noted at the L1 transverse processes. But the ALJ also explained the x-rays showed normal heights and alignments of the lumbar vertebral bodies and that there were no fractures or subluxation and no abnormal movement on flexion or extension.

Physical examinations, the ALJ noted, showed tenderness of the right sacroiliac joints, discomfort with palpation of the facets with mild to moderate facet tightness, significant paraspinal hypertonicity, dysesthesias radiating in the groin, knees, and foot in the right lower extremity and diminished Achilles' tendons reflexes bilaterally. Straight leg raising test produced pain in the lumbar spine and lower extremities. Artis had only a mildly antalgic gait and normal muscle strength. R 14.  The ALJ also noted physical therapy records showing limited range of motion in the lumbar spine, restricted piriformis, quadratus and lumbar paraspinals, and decreased strength in the lumbar region, right hip and knee and left knee. Artis had severe tenderness at L2-S1, and tenderness to palpation in the paraspinals, piriformis, and gluteus medius. The ALJ noted that the infrequency of Artis' visits to physical therapy limited his progression. R. 14.

The ALJ analyzed the results of a consultative physical examination that preceded the date of onset by eleven months.  The ALJ does not explain how this earlier examination was relevant to the period of disability and given the clear progression of the hip problem to surgery and the generally progressive nature of degenerative disc disease, this report should not have been weighed in the determination.

The ALJ discussed Artis' substantial right hip problems and the resulting surgery in November, 2019. After surgery Artis had an antalgic gait favoring the right side but did not require an assistive device. He had full hip strength in all muscle groups, but weakness and instability that required stabilization. He had moderate tenderness to palpation over the bilateral gluteus muscles, mild to moderate tenderness to palpation of the right greater trochanters, mild tenderness to palpation of the bilateral piriformis muscle, and mild tenderness to palpation to the right ischial bursa. R. 15-16.

The only examining medical opinion addressing Artis' physical condition during the relevant time reviewed by the ALJ is that of his treating nurse practitioner, Michell Cullen. She reported his back and hip diagnoses and gave opinions that would have resulted in a finding of disability. She found he would need to take unscheduled breaks and could stand and walk less than two hours per day. She also opined that he would miss an excessive amount of work due to his impairments and treatment. The ALJ accepted her opinion on the lifting and carrying limits and postural limits but otherwise rejected her opinions as not supported by evidence of only mild to moderate limits. He also found that the claimant's testimony regarding his limits in standing and walking and the limiting effects of his pain were not supported by the objective evidence.

The ALJ rejected the opinion of the DDS consultants who found Artis could perform at a light level of exertion.

### Evidence before the Appeals Council

In contrast to the earlier evidence, the later submitted evidence were orthopedic treatment records, focused on his back problems and includes multiple physical examinations by two orthopedists and an MRI. A January 29, 2020, examination by Dr. Moore found positive straight leg raising on the right, altered sensation in the right toe, and tenderness to palpation in his lumbar spine and right quadriceps tendon. The impression was recurrent low back pain with sciatica. The doctor contemplated an MRI and neurosurgery referral if Artis did not improve. R. 29. A March 11, 2020, examination again found Artis was recovering well from his surgery to his right hip, but was showing tenderness on lumbar paraspinal palpation, pain with single leg extension, with pain radiating down both legs down to the foot on the right but more than the left. He had positive bilateral straight leg raising tests, with some numbness and tingling in the right lower extremity in a nondermatomal distribution. The doctor concluded Artis was not

improving and was showing signs of nerve root tension. He recommended an MRI on the lumbar spine and neurosurgery referral. He also wanted Artis referred for evaluation and treatment by pain management. R. 31.

The orthopedist found a continuation of the problems and symptoms on June 17, 2020. He continued to have right leg sciatica "as well as burning in the interior thigh consistent with lateral femoral cutaneous nerve dysesthesias." R . 32 While there are some normal findings in the physical examination, the doctor notes "altered sensation lateral femoral cutaneous distribution as well as L4 distribution" R. 33, and a right positive straight leg raising. The impression from this visit with chronic low back pain "which she [sic] is failed extensive treatment with physical therapy and anti-inflammatories and activity modifications." R. 34. The treatment plan included a recommended MRI "given his altered sensation in the L4 distribution as well as weakness with L4 distribution that it [has] not gotten better with therapy to evaluate for any possible spinal cord or spinal nerve injuries with [his] clear sign of nerve root tension signs and especially in the L4 distribution." R. 35.

On August 19, 2020, Artis was seen by another orthopedist with the same group, a Dr. Vecchione. This doctor noted the history and subjective symptoms. Examination again showed paraspinal lumbar tenderness, with mildly decreased range of motion. Motor strength was decreased throughout the right lower extremity and normal on the left. Sensation was intact in all lower extremity dermatomes except along the right lower extremity L4 nerve root distribution. Straight leg raising was positive on the right. He ordered new x-rays and interpreted the lumbosacral spine x-rays as showing "moderate to severe L5- S1 spondylosis with facet arthropathy, disc height collapse, osteophyte formation, no spondylolisthesis and no fracture." R 37.

When Vecchione again saw Artis on September 2, 2020, he again found decreased strength through the right lower extremity. R. 40-41. Vecchione on review of the MRI found "spondylotic changes, including severe L5-S1 degenerative disc disease with endplate schlerosis, facet hypertrophy, ligamentum flavum hypertrophy and a broad-based disc osteophyte complex resulting in moderate central canal stenosis, bilateral lateral recess stenosis and bilateral foraminal stenosis." R. 41 He went on to state his findings of "severe L 5-S1 disc degeneration with endplate schlerosis resulting in vertical foraminal stenosis and mechanical back pain, which has been refractory to conservative measures to date." *Id.* Under the treatment plan Vecchioni stated "patient has significant lumbar spondylosis with degenerative disc disease, foraminal stenosis, and lumbosacral radiculopathy on imaging studies, *which is concordant with patient complaints*. *Id.* (Emphasis added).

Contrasting the records before the ALJ with the records submitted to the AC, several things stand out. First, the physical examinations relied upon by the ALJ are from North Mississippi Pain Management Center. The only orthopedic records before the ALJ are related to Artis' hip problem and the hospital records from the hip procedure. But the AC had orthopedic treatment records focused on Artis' back problems when his pain proved intractable despite pain management treatment. While his nurse practitioner's opinion supported Artis' claims of subjective pain problems and functional limits as a result, the ALJ rejected the opinion. Though nurse practitioners are acceptable medical sources, their opinions will not carry the weight of a specialized physician. In comparison, Vecchioni's statement as an orthopedist based on physical examinations and an MRI that his findings are "concordant with" Artis' complaints is far more compelling.

The Commissioner argues that Vecchioni's significant findings are anomalous, citing findings of the radiologist. The radiologist described the findings as showing "multilevel degenerative changes, most pronounced at L5-S1, where there is a broad-based disc osteophyte complex and bilateral facet arthropathy resulting in mild bilateral foraminal narrowing." While the descriptions are not identical, both doctor's reports describe abnormalities in the spine not revealed in the x-rays before the ALJ, which Dr. Moore described as showing just "some mild osteoarthritic changes." R. 34. Both reports support Artis' subjective complaints with significant findings on objective medical evidence from an MRI.

In short, this later evidence including treatment records and the MRI reports seem likely to lead to some further reduction in the RFC, and any further reduction in the RFC creates a likelihood of a favorable result. This evidence does not mandate a finding of disability but provides medical evidence and expert opinions sufficient to undermine confidence in the outcome.

Mindful of the deference due to the agency decision, the court nevertheless, finds error and remands the case for further administrative proceedings.

**SO ORDERED**, this the 8th day of March, 2022.

/s/ David A. Sanders
**UNITED STATES MAGISTRATE JUDGE**